## No. 2768.

**MIGUEL G. DE LIZARDI *v.* THE NEW ORLEANS CANAL AND BANKING COMPANY.**

The seizure of A's property under a suit against B, is a quasi offense, and the action based upon an obligation springing from a quasi offense, is prescribed by one year.

Where it was contended that even if the source of the obligation incurred by the defendant be conceded to have been a quasi offense, such as the wrongful attachment of the plaintiff's property, still the prescription should not begin to run until the end of the wrongful act, for until then the amount of the damages done by the continuous attachment could not have been ascertained;

Held—That if there is good reason why the law regulating prescriptions in such cases ought to be as is contended, yet that this court has no right to alter the positive provisions of the code which declares that prescription runs from the date on which the injury or damage was sustained.

But it is incumbent upon the party pleading prescription to show what portion of the damages proved occurred anterior to the year preceding the institution of the suit, or in other words, to establish what part of the plaintiff's demand is prescribed.

In fixing the rents due for the plantation seized, the highest estimate which the evidence will permit must be adopted, as the property was tortiously taken from the possession of the plaintiff.

APPEAL from the Fourth District Court, parish of Orleans. *Théard,* J. Trial by jury. *Roselius, Alfred Philips* and *A. Robert,* for plaintiff and appellee. *Lea, Finney & Miller, Campbell, Spofford & Campbell, Hyams & Jonas,* for defendants and appellants.

LUDELING, C. J. The plaintiff sues for eight hundred and seventy-five thousand five hundred and eighteen dollars and ninety-three cents. It is alleged that the petitioner has been and still is the owner of a sugar plantation situated in the parish of Plaquemines, in this State, known as the Santa Anna Plantation; that while he was in the peaceable possession and enjoyment of said plantation, with all the appurtenances thereunto belonging, the said New Orleans Canal and Banking.

Company instituted a suit against Manuel Julian de Lizardi, on or about the fifteenth of July, 1861, by virtue of a writ of attachment issued in said suit, said defendant illegally and wrongfully directed the sheriff to levy said attachment on the said sugar plantation, a large quantity of sugar and molasses, and other property on said plantation,. all of which is detailed and set forth in the return of said writ of attachment on file in said suit, in this honorable court; that said illegal attachment and seizure of the property of your petitioner was persisted in by said defendant, notwithstanding the remonstrances of your petitioner, from the fifteenth of July, 1861, to the eighteenth of June, 1868, when said plantation, and such portions of the other property which had not been lost and destroyed, were returned to your petitioner. And your petitioner further represents that the said suit,. which said defendant had instituted against Manuel Julian de Lizardi, was finally decided against said New Orleans Canal and Banking Company by the Supreme Court, as will more fully appear, together with other necessary particulars from the decree of the Supreme Court,. which has been filed in this court, to which reference is made as part of this petition. And your petitioner further represents that the damage and injury suffered and sustained by the illegal attachment. and seizure of the property of your petitioner, during the period aforesaid, amounted to the aforesaid sum of eight hundred and seventy-five thousand five hundred and eighteen dollars ninety-three cents, as will more fully appear, together with the details and specifications of the items of said damage and injury made part of this petition. And your petitioner further represents, that when said New Orleans Canal. and Banking Company obtained said order of attachment, Effingham Lawrence, Esq., became the security on the attachment bond on file in said suit, and that said Lawrence is liable *in solido*, with the New Orleans Canal and Banking Company, to the extent of the amount of said bond for the damage herein claimed. And your petitioner further represents that the amount of the crops in the specification of the damages sustained by him, by the illegal acts and doings of the defendant aforesaid, could and would have been made on said plantation if it had not been illegally attached and seized during the period aforesaid; that although amicably demanded, the defendant has neglected and refused to pay said debt.

The answer was a general denial and a prayer for a trial by jury.. Subsequently the plea of prescription of one and three years was filed.

The jury rendered a verdict in favor of the plaintiff for one hundred and eighty-five thousand dollars, and the defendant appealed.

The first question to be decided is, from what does the obligation sued upon spring ?

The plaintiff contends that it arises *ex quasi contractu negotiorum.*

.*gestorum ;* while the defendant insists that it arose *ex delicto* or *ex quasi delicto.*

The allegations of the plaintiff are that his property was illegally .seized and taken out of his possession by the sheriff, at the instance of the defendant, under an attachment against a third party, and that " the damage and injury suffered and sustained from the illegal attachment and seizure of his property during the period aforesaid amounted to the aforesaid sum."

It has often been decided by this court, that the seizure of A's property, under a writ against B is a *quasi* offense. Delisle *v.* Morgan, 2 N. S. 24 ; 6 R. 382, Edwards *v.* Turner ; 9 Mart. 624 ; 5 La. 39 ; 9 An. 490 ; C. C., articles 2315, 2316.

The action based upon an obligation springing from a *quasi* offense is prescribed by one year. C. C., article 3536 ; 20 An. 151, 214, 323.

The learned counsel for the plaintiff insists, however, that even if the source of the obligation incurred by the defendant be conceded to have been a *quasi* offense, the wrongful attachment of the plaintiff's property, still the prescription should not begin to run until the end of the wrongful act, for until then the amount of the damages done by the continuing attachment could not have been known ; and he refers to the case of Mestier *v.* The New Orleans, Opelousas and Great Western Railroad Company, 16 An. 354, in support of that position.

We concede that there is good reason why the law regulating prescription in such cases ought to be as the counsel contends that it is. But we have no right to alter the positive provision of the code, which declares that prescription runs from the day on which the injury or .damage was sustained. C. C. 3637. And that is what is maintained in the case of Mestier, quoted by plaintiff, as we understand that case.

We think the prescription of one year should be maintained against the portions of .the demand of the plaintiff, which arose one year before the institution of this suit.

But it is incumbent upon the party pleading prescription to show -what portion of the damages proved occurred anterior to the year preceding the institution of the suit, or, in other words, to prove what part of the plaintiffs' demand is prescribed.

The evidence shows that the plantation of the plaintiff was in first rate order when it was attached, and that it was in very bad order, when it was delivered to the plaintiff in July, 1868. That the ditches .and draining canals were partially filled, the bridges rotten and the .cabins, draining machines, etc., were greatly out of repair.

When questioned by the defendant, Mr. Pilie, a civil engineer, who .made an estimate of the cost to repair the damages done on the plantation, answered that the bridges had not suddenly become rotten, nor .had the ditches and canals suddenly been filled ; that the ditches and

canals had been filled in "about twelve or eighteen months" and the bridges and cabins had got in their damaged conditions in about two years. This does not enable us to say what part of the damages occurred more than a year before the suit. The same remark is applicable to the injury done to the draining machine and other machinery on the place. The evidence shows that the stable was blown down by a storm, and more than a year before this suit was filed.

The defendant is not responsible for the destruction of the stable, nor for the fruits of the plantation, except for the last year preceding the institution of this suit. The defendant is responsible for the injury done to the plantation, which he has failed to prove occurred more than a year before the suit, and for the rent of the plantation for the last year the plaintiff was deprived of his property.

In fixing the rents of the plantation, we adopt the highest estimate which the evidence will permit us to adopt, as the property was tortiously taken from the possession of the plaintiff, to wit: $10,000; and we estimate the damages to the plantation, in the filling up of the ditches and draining canals, the destruction of bridges, injury to cabins, etc., at $19,511 48.

It is therefore ordered and adjudged that the verdict of the jury be set aside; that the judgment of the lower court be annulled, and that there be judgment in favor of the plaintiff against the defendant, the New Orleans Canal and Banking Company, for the sum of $29,511 58, with five per cent. per annum interest from seventeenth January, 1870, and costs of the lower court. It is further ordered that the costs of appeal be paid by appellee.

Rehearing refused.

Mr. Justice Morgan took no part in this case.